Crothers, Justice, concurring in part and dissenting in part.
[¶23] I concur in that portion of the majority opinion concluding the officer's knocking on Bridgeford's car window was community caretaking and not a Fourth Amendment violation involving trespass. I respectfully dissent from that portion of the majority opinion suggesting law enforcement can proceed under the community caretaking function to enter a constitutionally protected area unless a person affirmatively communicates they neither need nor desire assistance.
[¶24] This Court reviewed our application of the community caretaking function as follows:
"Law enforcement officers often serve as community caretakers. Lapp v. N.D. Dep't of Transp. , 2001 ND 140, ¶ 14, 632 N.W.2d 419 (citing State v. DeCoteau , 1999 ND 77, ¶ 19, 592 N.W.2d 579 ). The United States Supreme Court described community caretaking functions as those 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' Cady v. Dombrowski , 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Community caretaking allows law enforcement-citizen contact, including stops, without an officer's reasonable suspicion of criminal conduct. State v. Glaesman , 545 N.W.2d 178, 181 (N.D. 1996). For Fourth Amendment purposes, a seizure does not occur when an officer approaches a parked vehicle if the officer questions the occupant in a conversational manner and does not issue orders to the person or demand a *144 response. State v. Langseth , 492 N.W.2d 298, 300 (N.D. 1992) (citing Wibben v. N.D. State Highway Comm'r , 413 N.W.2d 329, 334-35 (N.D. 1987) (VandeWalle, J., concurring)). However, even a casual encounter can become a seizure if a reasonable person would view the officer's actions-if done by another private citizen-as threatening or offensive. Id. (citing Wibben , at 335 ). This may occur through an order, a threat, or a weapon display. Id. An officer's initial community caretaking encounter also may cause the officer to develop a reasonable and articulable suspicion of unlawful conduct. Lapp , at ¶ 14.
"Our previous cases provide examples of law enforcement officers performing community caretaking functions. See Lapp v. Dep't of Transp. , 2001 ND 140, ¶¶ 14-15, 632 N.W.2d 419 (holding an officer's encounter with an individual justified by the officer's community caretaking role when the individual was slumped over the steering wheel of a vehicle with its engine running); City of Fargo v. Sivertson , 1997 ND 204, ¶ 10, 571 N.W.2d 137 (determining an officer's initial approach of a driver who failed to proceed around the scene of an accident with the rest of traffic was a caretaking encounter); City of Grand Forks v. Zejdlik , 551 N.W.2d 772, 773-75 (N.D. 1996) (holding an officer was acting as a community caretaker when he initially approached an individual slumped over the steering wheel of an idling vehicle); State v. Franklin , 524 N.W.2d 603, 605 (N.D. 1994) (determining officers' approach of individuals parked at night in motel parking lot and slumped down in their seats was more of a caretaking encounter than a search or seizure); State v. Halfmann , 518 N.W.2d 729, 730-31 (N.D. 1994) (holding an officer acted in a caretaking capacity when he approached a driver after she drove to the shoulder of a gravel road and stopped her vehicle).
"A review of our case law also reveals situations where law enforcement officers did not act as community caretakers. See State v. Keilen , 2002 ND 133, ¶ 19, 649 N.W.2d 224 (holding the community caretaking exception did not apply to an apartment search when officers arrived and did not see a disturbance or anyone in need of assistance); City of Jamestown v. Jerome , 2002 ND 34, ¶ 8, 639 N.W.2d 478 (determining an officer did not act as a community caretaker because his purpose in talking with the defendant was to investigate a possible legal violation); State v. DeCoteau , 1999 ND 77, ¶ 21, 592 N.W.2d 579 (holding officers had no community caretaking role to fill when they arrived at a home, saw no disturbance, and were told by the homeowner she did not need or request their assistance); State v. Hawley , 540 N.W.2d 390, 392 (N.D. 1995) (declining to address community caretaking because the officer had a reasonable and articulable suspicion of a parking violation); State v. Brown , 509 N.W.2d 69, 71-72 (N.D. 1993) (holding an officer's vehicular stop was made to determine if driver was intoxicated, not for the community caretaking purpose of rendering assistance); State v. Sarhegyi , 492 N.W.2d 284, 285-86 (N.D. 1992) (determining an officer's stop of a lone vehicle parked in a farm implement dealer's lot, which attempted to leave when he approached, was not community caretaking); State v. Langseth , 492 N.W.2d 298, 301 (N.D. 1992) (concluding the community caretaking exception did not apply when an officer pursued the defendant while flashing the patrol car's warning lights)."
State v. Boyd , 2002 ND 203, ¶¶ 7-9, 654 N.W.2d 392.
*145 [¶25] I believe the majority subtly changes the inquiry rather than carefully follow our cases. They write, "The record provides no indication of any obvious sign Bridgeford did not need or desire assistance." Majority opinion, ¶ 18. However, it was not incumbent on Bridgeford to communicate that he did not need or desire assistance. Instead, under the community caretaker function an officer cannot invade a constitutionally protected space unless it is clear that assistance is needed or wanted. To do so, the State must prove the officer objectively thought Bridgeford needed help.
[¶26] Here, Bridgeford did not display signs of distress. There was no indication of trauma. He was not acting erratically. Unlike our other impaired driver cases where entry into the vehicle was found to be community caretaking, Bridgeford did not appear to be incapacitated or need help. Instead, the officer testified that "it appeared that there was a male sleeping inside of the vehicle" and that Bridgeford "just looked like he was sleeping." Therefore, I respectfully dissent from that part of the majority opinion holding the officer's warrantless entry into the automobile did not violate the Fourth Amendment to the United States Constitution.
[¶27] Daniel J. Crothers
Jerod E. Tufte