2017 ND 116

STATE of North Dakota, Plaintiff and Appellee

v.

Miguel AYALA, Defendant and Appellant

No. 20160369

Supreme Court of North Dakota.

Filed 5/16/2017

Jessica J. Binder, State's Attorney, Stanton, N.D., for plaintiff and appellee.

Mark A. Kaffar, Hazen, N.D., for defendant and appellant.

Tufte, Justice.

[¶ 1] Miguel Ayala appeals a criminal judgment entered on his conditional plea of guilty to driving under the influence. He reserved his right to appeal the district court's denial of his motion to suppress his blood test result, arguing that law enforcement failed to "inform" him as required under the implied-consent law. We affirm the judgment, concluding the district court did not err in finding the deputy properly informed Ayala.

I

[¶ 2] The facts relied upon by the district court were not disputed. A deputy sheriff stopped Ayala when he failed to dim his bright lights for oncoming traffic. The deputy testified that he questioned Ayala and detected the odor of alcohol emitting from the car. It became apparent to the deputy that Ayala struggled with English. A video recording of the stop showed the deputy attempting to communicate with Ayala and allowing him to ask questions.

[¶ 3] The deputy conducted the horizontal gaze nystagmus field sobriety test and observed six out of six clues that Ayala was intoxicated. He then read Ayala the implied-consent advisory in English, requesting that Ayala submit to a preliminary screening breath test. The deputy repeated and rephrased portions of the advisory in an attempt to ensure Ayala's understanding, but did not read the advisory in Spanish, Ayala's primary language.

Ayala submitted to the test, which showed his blood alcohol concentration to be 0.18. The deputy arrested Ayala and brought him to the Mercer County Jail. Once there, the deputy again read the implied-consent advisory and asked Ayala to submit to an Intoxilyzer breath test. Ayala submitted to the test, which revealed a blood alcohol concentration of 0.212.

[¶ 4] The State charged Ayala with driving under the influence. Ayala moved the district court to suppress evidence of his breath test, arguing the deputy failed to "inform" him of North Dakota's implied-consent laws as required. He argued an "officer fails to inform the individual charged" under N.D.C.C. § 39–20–01(3)(b) unless the implied-consent advisory is conveyed to the driver and the driver is "actually informed." The district court denied Ayala's motion, concluding that despite the language difficulties between them, the deputy properly informed Ayala under the implied-consent law. Ayala pled guilty, reserving this issue, and now appeals.

## II

■■■ [¶ 5] The issue on appeal is the meaning of "inform" as used in N.D.C.C. § 39–20–01. This is a question of statutory interpretation, which we review de novo. *State v. Kuruc*, 2014 ND 95, ¶ 32, 846 N.W.2d 314. We begin with the plain language of the statute to determine whether it is unambiguous. We interpret the words in a statute to give them their commonly understood meaning unless, reading the statute as a whole, a contrary meaning plainly appears. *State v. Davis*, 2016 ND 145, ¶ 11, 882 N.W.2d 281 (citing N.D.C.C. §§ 1–02–02 and 1–02–07). If a statute is ambiguous and susceptible to multiple rational interpretations the court may resort to extrinsic aids, "including the object sought to be attained, the circumstances under which the legislation was enacted,

and the legislative history." *Id.* (citing N.D.C.C. § 1–02–39).

■■■ [¶ 6] When a law enforcement officer requests a chemical test to determine if a driver has alcohol in his system, the test results are not admissible "if the law enforcement officer fails to inform the individual" of the implied-consent law. N.D.C.C. § 39–20–01(3)(b). To satisfy this requirement, a complete implied-consent advisory must be provided to the driver. *State v. O'Connor*, 2016 ND 72, ¶ 8, 877 N.W.2d 312. We have not previously considered the question of whether the advisory must simply be read or whether something more is required to "inform" a driver.

■■■ [¶ 7] On appeal, the State argues that the requirement to "inform" a driver is equivalent to giving the advisory or notifying the driver. The State concedes that reading at an inaudible volume or at the speed of an auctioneer would create an unjust result, which we presume is not intended. N.D.C.C. § 1–02–38(3). Ayala argues in his brief that the legislature intended to create an objective test in which the officer is expected to act in an objectively reasonable manner to convey the advisory to drivers. During oral argument, however, he asked us to create a bright-line rule by which officers must convey the advisory in the primary language of the driver. After finding that the video showed Ayala was "properly informed," the district court concluded that the statutory requirement to "inform" did not necessarily include reading or otherwise conveying the implied-consent advisory in the driver's primary or preferred language.

[¶ 8] To the extent that "inform," in this statutory context, means something more than the officer simply reading the advisory, we hold that it must be conveyed in an objectively reasonable way calculated to be comprehensible to the driver. Ordinarily,

reading the advisory will be sufficient. In the context of the implied-consent law, we must consider that 39–20–01 is a requirement for admissibility but consent has been given by the act of driving. *McCoy v. N.D. Dep't of Transp.*, 2014 ND 119, ¶ 23, 848 N.W.2d 659 ("implied consent occurs at the time an individual operates a motor vehicle"). We also recognize that these advisories are given to individuals who are under arrest for driving under the influence. To read "inform" as requiring the deputy to assess the level of actual understanding of a driver whom the deputy has observed exhibiting signs of intoxication is not a rational reading of "inform" in this context. It would require an officer to perform a near-impossible task as to most impaired drivers. A requirement that the officer confirm some level of knowledge transfer to a driver is unworkable and would move away from the bright line rules pervasive in this statutory scheme.

[¶ 9] We decline Ayala's invitation to interpret § 39–20–01 as requiring an officer in every case to convey the advisory in the primary or preferred language of the driver. Nothing in the statute suggests the legislature intended this meaning. Moreover, implied consent has already been given by the driver through the act of driving—the advisory is given to allow an opportunity to ratify or withdraw consent. *McCoy*, 2014 ND 119, ¶ 23, 848 N.W.2d 659. Where, as here, a driver has difficulty communicating with the officer owing to limited fluency in English, the test remains the same: was the implied-consent advisory presented in a way reasonably calculated to be comprehensible to the driver.

[¶ 10] Having determined the meaning of "inform" in § 39–20–01(3)(b), we now look to whether the officer here conveyed the advisory in a manner sufficient to satisfy this requirement. When reviewing a district court's denial of a mo-

tion to suppress, we defer to its findings of fact, affirming "if there is sufficient competent evidence capable of supporting the court's findings and if its decision is not contrary to the manifest weight of the evidence." *State v. Canfield*, 2013 ND 236, ¶ 6, 840 N.W.2d 620. In making its findings, the court relied significantly on the video recording of the traffic stop. From this, it appeared to the court that Ayala's English proficiency was limited but not so limited that he could not converse to some degree with the deputy. The record shows that the deputy repeated and rephrased portions of the advisory in an attempt to help him understand. The video recording of their communication shows that before the advisory was conveyed, Ayala responded to the officer's questioning and communicated with the officer. The court found the officer had "properly informed" Ayala of the implied-consent law. We conclude there is sufficient competent evidence fairly supporting the district court's findings and those findings are not contrary to the manifest weight of the evidence.

### III

[¶ 11] We affirm the judgment, concluding the district court did not err in finding law enforcement had "informed" Ayala of the required implied-consent advisory.

[¶ 12] Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.